## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUDOLPH T. TEXTOR, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | **CIVIL ACTION NO.** <br> **08 CV 7041 (DLC)** |
| vs. ) ) ) | |
| NOVAGOLD RESOURCES, INC., RICK VAN NIEUWENHUYSE, ROBERT J. MACDONALD and PETER W. HARRIS, ) ) ) ) | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| Defendants. ) ) ) | |
| ) | **JURY TRIAL DEMANDED** |

Plaintiff, Rudolph T. Textor ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which includes, among other things, a review of the Defendants' public statements, conference calls, filings with the United States Securities and Exchange Commission ("SEC"), wire and press releases published by and regarding NovaGold Resources, Inc. ("NovaGold" or the "Company") and securities analysts' reports and advisories about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. Plaintiff brings this action on his own behalf and on behalf of all other persons or entities who purchased NovaGold securities between October 25, 2006 and November 23, 2007, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, and under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act").

2.     NovaGold, a Canadian corporation organized under the laws of the Province of Nova Scotia, with its principal place of business in Vancouver, British Columbia, Canada, is engaged in the business of exploration and development of mineral properties.  The Company's primary focus is gold properties although its properties also have significant copper, silver and zinc resources.  The Company conducts its operations through wholly owned subsidiaries and joint ventures.  The Company's portfolio of gold properties includes Galore Creek, Donlin Creek, the Nome Operations (including Rock Creek, Big Hurrah and Nome Gold), and the Ambler project.  The Company's shares are traded on the American and Toronto Stock Exchanges.

3.     Throughout the Class Period, Defendants falsely portrayed NovaGold as a rapidly growing company on the verge of moving from a mid-tier exploration and development company to a mid-tier gold and copper production company by issuing a series of materially false and misleading statements regarding the costs, progress and viability of its multi-billion dollar Galore Creek project.

4.     The Class Period begins on October 25, 2006, when NovaGold issued a press release touting the results of a feasibility study performed by Hatch Ltd. ("Hatch") that purportedly "confirmed" the economic viability of the Galore Creek project.  Indeed, according to a statement made by the Company's President and CEO, Rick Van Nieuwenhuyse ("Nieuwenhuyse"), in the October 25, 2006 press release, "the Feasibility Study confirms that Galore Creek is one of the world's largest undeveloped copper-gold-silver projects with one of the lowest cash costs in the industry…"  The Feasibility Study estimated the capital costs for the Galore Creek project to be Cdn $2.2 billion.

5.     The Hatch Feasibility Study enabled the Company to successfully fend off a hostile takeover bid by mining giant Barrick Gold by maintaining the price of the Company's shares above Barrick Gold's $16 per share tender offer.  In fact, when fending off Barrick Gold's takeover bid Nieuwenhuyse assured shareholders "*that at US$16, NovaGold shares are better than money in the bank*."  NovaGold press release dated Nov. 10, 2006 (emphasis added).

6.     Moreover, the Hatch Feasibility Study allowed the Company to raise hundreds of millions of dollars in an April 2007 secondary stock offering, thus providing a strong motive for the Defendants (defined below) to misrepresent the Hatch Feasibility Study as a bankable study. Throughout the Class Period, the Company regularly and systematically assured the investing public that the construction of the Galore Creek project was on schedule and on budget.

7.     On November 26, 2007, the Company shocked investors when it announced that it would suspend activities at Galore Creek based on the results of an updated feasibility study, which estimated the capital costs for the Galore Creek project to be $5 billion – approximately *127 percent greater* than Hatch had estimated in October 2006.

8.     Upon the release of this news, the Company's shares declined $10.76 per share, or more than 53 percent, to close on November 26, 2007 at $9.48 per share, on unusually heavy trading volume.

9.     The announcement caught the market completely by surprise.  As stated by Citigroup metals analysts John Hill and Graham Wark, "The magnitude of underestimation is shocking to us …"  and by Dorothy Kosich, "Citigroup calls for NovaGold sale after Galore Creek 'mining disaster,'" *Mineweb*, Nov. 30, 2007.  The Company's shares have not recovered and continue to trade under $10 per share.

10.     The Complaint alleges that, throughout the Class Period, Defendants failed to disclose materially adverse facts about the Company's operations and prospects.  Specifically, Defendants failed to disclose that:

(1) contrary to the Defendants' representations, the Company had failed to make reasonable estimates as to capital expenditures necessary to mine Galore Creek, which were underestimated by more than $3 billion.

(2) the development of Galore Creek was not proceeding on schedule and was a year and a half to two years behind schedule;

(3) the results of the Hatch Feasibility Study announced on October 25, 2006 materially understated the capital costs and construction schedule required to successfully mine the Galore Creek site;

(4) Defendants knew but failed to disclose that the Hatch Feasibility Study was not a "Bankable Feasibility Study."

(5) NovaGold used its Hatch Feasibility Study as a marketing tool to fend off Barrick Gold's takeover bid and to artificially support its stock price when Defendants knew or were reckless in disregarding that the Hatch Feasibility Study failed to: (i) use reasonable discount rate assumptions that reflected the Company's true cost of capital; (ii) evaluate and discount the major risks associated with development of the Galore Creek project; and (iii) failed to use realistic timeliness for permitting and construction of the project.

(6) the Company lacked adequate internal controls;

(7) as a result of the foregoing, the Company's disclosures in, *inter alia*, its SEC filings were materially false and misleading at all relevant times; and

(8) as a result of the foregoing, the Company's statements about its operations and future business prospects were lacking any reasonable basis when made.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

### JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to §§10(b), 20A, and 20(a) of the Exchange Act, (15 U.S.C. §§78j(b), 78t-1, and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

14.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b).  NovaGold trades shares on the American Stock Exchange ("AMEX") which is located in the Southern District of New York.  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  NovaGold, *inter alia*, makes corporate presentations to investors in New York City.

15.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16.     Plaintiff, is a resident of the United States and as set forth in the accompanying certification, incorporated by reference herein, purchased NovaGold's securities at artificially inflated prices during the Class Period and has been damaged thereby.

17.     Defendant NovaGold is a corporation organized under the laws of the Province of Nova Scotia, Canada, with its principal place of business located Suite 2300 – 200 Granville Street, PO Box 24, Vancouver, British Columbia, Canada.  NovaGold is engaged in the business of mineral exploration and development in Alaska and Western Canada.  NovaGold's common shares are registered under Section 12(b) of the Securities Exchange Act of 1934 and are traded on the American and Toronto Stock Exchanges under the symbol "NG."  According to a complaint filed by NovaGold on or about August 24, 2006, in the U.S. District Court for the District of Alaska, "NovaGold believes that more than 50% of its common shares are held by U.S. shareholders."

18.     Defendant Nieuwenhuyse joined NovaGold as President and Chief Operating Officer in January 1998 and has served as Chief Executive Officer since May, 1999.  Prior to his employment with NovaGold, Nieuwenhuyse was the Vice President of Exploration for Barrick Gold Corporation ("Barrick Gold").

19.     Defendant Robert J. (Don) MacDonald ("MacDonald") has served as the Company's Senior Vice President, Chief Financial Officer and Secretary since January, 2003.

20.     Defendant Peter W. Harris ("Harris") has served as the Company's Senior Vice President and Chief Operating Officer since October, 2005.  Prior to his employment with NovaGold, Harris was Senior Vice President, Project Development at Barrick.

21.     Defendants Nieuwenhuyse, MacDonald and Harris are collectively referred to hereinafter as the "Individual Defendants."

22.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of NovaGold's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

23.     The Individual Defendants and NovaGold are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

**A.     The Galore Creek Project**

24.     Galore Creek, located in northwestern British Columbia, is an undeveloped site containing large porphyry-related copper-gold-silver deposits.  Gold deposits at Galore Creek were initially discovered in the 1950's.

25.     After optioning Galore Creek in 2003, NovaGold promptly commissioned Hatch to conduct what would be a three year feasibility study (the "Hatch Feasibility Study") for the Galore Creek project.  NovaGold consolidated the Galore Creek district in 2004 and continued to

drill and expand the resource until October 2006, when the Hatch Feasibility Study was completed.

### B. Barrick Gold Makes Hostile Takeover Bid of NovaGold

26.     On or about July 24, 2006, non-party Barrick Gold made an unsolicited offer to purchase all of the shares of NovaGold for US$14.50 per share.  Barrick Gold, a Canadian corporation organized under the laws of the Province of Ontario, is one of the world's largest gold producers with a portfolio of 27 operating mines, advanced exploration and development projects across five continents and large land positions on the most prolific and prospective mineral trends.

27.     On news of Barrick Gold's hostile takeover bid, the price of NovaGold shares soared from a closing price of $11.67 per share on July 24, 2006, to close at $16.17 per share on July 25, 2006 on volume of 17,005,000 shares traded, as compared to 297,800 shares traded the preceding day.

28.     NovaGold responded to Barrick Gold's offer by advising its shareholders to reject the offer and not tender their shares.  For example, on October 25, 2006, the Company issued a press release stating that "The Board determined that Barrick's US$14.50 per share offer was inadequate and significantly undervalued NovaGold's world-class gold and copper projects and the Company's growth potential."

### C. NovaGold Announces the Results of the Galore Creek Feasibility Study

29.     While Barrick Gold's hostile takeover bid was outstanding, on October 25, 2006, NovaGold announced the results of the Hatch Feasibility Study.  According to the Company, the Hatch Feasibility Study "confirm[ed] the economic viability of a conventional open-pit mining operation [at Galore Creek] using long-term metals prices and provides the basis for NovaGold's

first Proven and Probable Reserves for copper, gold and silver."  Nieuwenhuyse also stated that

the Hatch Feasibility Study confirmed "that Galore Creek is one of the world's largest

undeveloped copper-gold-silver projects with one of the lowest cash costs in the industry, and is

another important fundamental step in the Company's market revaluation from exploration to

producer valuation."  The Hatch Feasibility Study estimated the capital costs for the Galore

Creek project to be Cdn $2.2 billion.

30.    Contrary to the Company's representations, the Hatch Feasibility Study was not a

bankable feasibility study because, among other things, the Hatch Feasibility Study failed to: (i)

use reasonable discount rates that reflected the Company's true cost of capital; (ii) evaluate and

discount the major risks associated with development of the Galore Creek project; and (iii) failed

to use realistic timeliness for permitting and construction of the project.  In reality, NovaGold

used the Hatch Feasibility Study as a marketing tool to artificially support its stock price to fend

off Barrick Gold's hostile takeover bid and to raise much needed capital through a secondary

stock offering in April 2007 (described below).  Defendants knew or were reckless in

disregarding that the development of Galore Creek into a productive mine was economically

unfeasible.

31.    The Defendants touted the results of the Hatch Feasibility Study as a basis to

reject Barrick Gold's offer.  For example, on October 31, 2006, the Company issued a press

release entitled "NovaGold Board Recommends Shareholders REJECT Barrick's Amended

Hostile Bid."  Therein, the Company cited the purported value of the Galore Creek Project as a

reason to reject Barrick Gold's hostile bid, stating *inter alia*:

> NovaGold . . . today announced that its Board of Directors, based on the advice of
> its Special Committee of independent directors, recommends that NovaGold
> shareholders REJECT Barrick Gold Corporation's . . . hostile take-over bid to

acquire all of the outstanding shares of NovaGold for US$16.00 per share and that shareholders DO NOT tender their shares.

In arriving at its recommendation, which will be described in detail in the Notice of Change to the Directors' Circular dated October 30, 2006, the Board of Directors considered a number of factors, including NovaGold's achievements since the original bid was announced in July, and the following additional factors:

\*       \*       \*

- **NovaGold has achieved several value-adding milestones since the announcement of the Barrick bid, including:**

  - **Release of an independent Galore Creek Feasibility Study, confirming economics of the project and providing the Company's first Proven and Probable Reserves**

\*   \*   \*

  - **Completion of several key permitting steps at the Galore Creek copper-gold-silver project**  (Emphasis added.)

32.     On November 8, 2006, the Company issued a press release entitled "NovaGold Shareholders Overwhelmingly Reject Barrick Hostile Takeover Bid," in which the Company stated:

> NovaGold . . . announced today that its shareholders have overwhelmingly rejected a hostile takeover bid from Barrick Gold . . . which was today extended for the fifth time to 11:59 PM Toronto time on November 21, 2006.  "After almost four months, four extensions and one token increase in the offer price, Barrick has persuaded the holders of only 19% of NovaGold shares on a fully diluted basis to tender to its undervalued and inadequate bid," said Rick Van Nieuwenhuyse, President and CEO of NovaGold. "Management and the Board remain focused on building shareholder value. Our shareholders recognize that Barrick's bid does not represent full value for the Company's current strategic assets and growth potential.

33.     On November 22, 2006, the Company issued another press release entitled "NovaGold Shareholders Once Again Overwhelmingly Reject Hostile Takeover Bid - Barrick Extends for Sixth Time."

34.     On December 6, 2006, Barrick Gold allowed its bid for the Company to expire, having refused to go above its $16 per share offer despite NovaGold's stock trading above this price.

35.     On April 18, 2007, NovaGold announced its intention to hold a common stock offering in part to finance the Galore Creek project.   Six days later, on April 24, 2007, the Company announced the common stock offering had closed, and that $203 million had been raised.

36.     Also in April, 2007, NovaGold engaged AMEC Americas Limited ("AMEC"), an independent engineering firm, to review the Hatch Feasibility Study (the "AMEC Study"), though this engagement was not immediately disclosed to the market.

37.     By May 23, 2007, the Company had obtained a joint venture partner for the Galore Creek project, Teck Cominco ("Teck"), a diversified mining and metals company headquartered in Vancouver, Canada.   In exchange for a 50 percent stake in the Galore Creek project, Teck agreed to fund up to a fixed amount of the construction, with each company thereafter paying its pro rata share of the funding.

38.     In September, 2007, NovaGold hosted analysts at Galore Creek to research and report on the first one hundred days of construction.   According to an analyst from Beacon Rock Research, LLC, the progress being made was "nothing short of amazing."     He also noted "Galore Creek has the potential to become one of the world's largest copper-gold mines."

39.     Without any warning, on November 26, 2007, NovaGold announced it was suspending operations at the Galore Creek project.

40.     Throughout the Class Period, Defendants issued materially false and misleading statements regarding the costs, progress and viability of its multi-billion dollar Galore Creek project.

### Materially False and Misleading
### Statements Issued During the Class Period

41.     The Class Period begins on October 25, 2006.  On this day, the Company issued a press release entitled "Final Feasibility Study Completed at NovaGold's Galore Creek Project," describing the results of the Hatch Feasibility Study.  The October 25, 2006 press release, *inter alia*, stated:

> Hatch Ltd., an independent engineering services company located in Vancouver, B.C., Canada, together with a number of specialized consultants, has completed the Feasibility Study for NovaGold's Galore Creek project in northwestern British Columbia. **This study confirms the economic viability of a conventional open-pit mining operation using long-term metals prices and provides the basis for NovaGold's first Proven and Probable Reserves for copper, gold and silver.**
>
> *            *            *
>
> **"The Feasibility Study confirms that Galore Creek is one of the world's largest undeveloped copper-gold-silver projects with one of the lowest cash costs in the industry, and is another important fundamental step in the Company's market revaluation from exploration to producer valuation. We are confident that opportunities remain to increase the resource base prior to the start of production, potentially further optimizing overall economics."**
>
> Project Economics
>
> **A financial analysis using the base case parameters set out below indicates that the Galore Creek project is expected to generate an after-tax internal rate of return of approximately 10.6% and have an undiscounted after-tax net present value of US$1.74 billion.** An analysis has also been performed using spot prices, 3-year trailing average prices and a low metals price case. **The Feasibility Study evaluated the capital costs, operating and processing costs, taxes and treatment charge for the project.**
>
> *            *            *
>
> **"NovaGold is rapidly advancing the Galore Creek project to production,"** said Peter Harris, Chief Operating Officer of NovaGold. **"Our experienced**

**construction team is ramping up and is ready to begin construction on the first phase access infrastructure for the project as soon as we have Board approval, following receipt of permits.** Based on the Provincial and Federal permitting schedule, the project is on target to receive permits in the second quarter of 2007. Completion of the first phase of construction should add substantial value to the project and reduce overall project development risk by providing road access and power to the Galore Creek mine site in preparation for the second larger phase of actual mine construction." (Emphasis added.)

42.     The October 25, 2006 press release also stated that "The Board determined that Barrick's US$14.50 per share offer was inadequate and significantly undervalued NovaGold's world-class gold and copper projects and the Company's growth potential."

43.     On October 31, 2006, the Company issued a press release entitled "NovaGold Board Recommends Shareholders REJECT Barrick's Amended Hostile Bid." Therein, the Company cited the purported value of the Galore Creek Project as a reason to reject Barrick Gold's hostile bid, stating *inter alia*:

- **NovaGold has achieved several value-adding milestones since the announcement of the Barrick bid, including:**

  - **Release of an independent Galore Creek Feasibility Study, confirming economics of the project and providing the Company's first Proven and Probable Reserves**

    *       *       *

  - **Completion of several key permitting steps at the Galore Creek copper-gold-silver project** (Emphasis added.)

44.     On November 8, 2006, the Company issued a press release entitled "NovaGold Shareholders Overwhelmingly Reject Barrick Hostile Takeover Bid," in which the Company claimed the Galore Creek Project as a reason its shareholders rejected Barrick's hostile bid for the Company, stating:

Our shareholders recognize that Barrick's bid does not represent full value for the Company's current strategic assets and growth potential.

**"Barrick's minimum tender condition is 50.1% of the shares on a fully diluted basis. Barrick said NovaGold shareholders had a decision to make on November 7th. The holders of 81% of NovaGold shares made the decision that US$16 is not enough."**

**NovaGold has achieved a number of significant milestones since the bid was announced, which management believes have not been reflected in the current share price because of the outstanding takeover bid.**

- **Completed final Feasibility Study at Galore Creek, adding substantial gold and copper reserves**

\*     \*     \*

[W]ith our experienced project development team already in place, the Company has major value-adding milestones targeted for the next few quarters that should demonstrate why NovaGold is undervalued at current share price levels, including:

- **Finalize selection of a financing partner for Galore Creek and obtain Board approval for start of construction, upon receipt of permits**

- **Release results from the 2006 drilling programs at Donlin Creek and Galore Creek, which should increase the resource estimates at both projects as Inferred Resources are converted to Measured and Indicated** (Emphasis added.)

45.     On November 14, 2006, the Company issued a press release entitled "NovaGold Provides update on New Galore Creek Project Advisors," touting the progress made with regard to the Galore Creek project, and the ease with which the Company would be acquiring financing for the promising project.  The press release stated, *inter alia*:

**"With the Feasibility Study for Galore Creek now complete, NovaGold has been approached by a variety of interested financial and industry partners,"** said Rick Van Nieuwenhuyse, President & CEO of NovaGold. **"In view of the discussions so far, we are confident that Galore Creek is of significant interest to potential joint venture parties and eminently financeable in the current market place."**  (Emphasis added.)

46.     NovaGold subsequently decided on a finance advisor, and on November 16, 2006, the Company issued a press release entitled "NovaGold Appoints Citigroup as Finance Advisor

14

for Galore Creek Project" announcing same and reiterating the Company's plans to move

forward with the Galore Creek project, stating:

> NovaGold . . . has appointed Citigroup Global Markets Inc. ("Citigroup") as financial advisor to assist the Company in securing financing for its Galore Creek copper-gold-silver project in northwestern British Columbia. NovaGold has selected Citigroup to support accelerating discussions with prospective joint venture parties and to assist the Company as it arranges project financing during the first half of 2007. Citigroup has been involved in arranging and structuring financing for numerous large-scale mining projects worldwide.
>
> "We are pleased with Citigroup's decision to expand their advisory work on behalf of the Company. We look forward to working with Citigroup during this important period in the transition from development stage to producer," said Rick Van Nieuwenhuyse, President and CEO of NovaGold. **"With Citigroup in place as our project finance advisor we are rapidly moving forward with our discussions with potential joint venture parties at Galore Creek, with the objective to have a final party selected and financing in place to be able to commence construction in 2007, upon receipt of permits.** Financing for the Galore Creek project may include joint venture arrangements, project debt financing and the issuance of equity or debt securities by NovaGold.["] (Emphasis added.)

47.     On November 22, 2006, the Company issued a press release entitled "NovaGold

Shareholders Once Again Overwhelmingly Reject Hostile Takeover Bid - Barrick Extends for

Sixth Time."   Therein, the Company again cited the Galore Creek Project as a reason its

shareholders rejected Barrick's hostile bid for the Company, stating:

> "Once again, NovaGold's shareholders have sent Barrick a clear message that their US$16 bid is inadequate," said Rick Van Nieuwenhuyse, President and CEO of NovaGold. "With so few shares tendered to Barrick's bid, clearly the vast majority of our shareholders agreed with NovaGold's Board and management that the Company's world-class assets and production growth profile are worth more than Barrick's offer. Barrick challenged NovaGold shareholders to make a decision, and they have clearly decided that Barrick's 'best' offer of US$16 is just not enough for control of NovaGold.
>
> "NovaGold is all about growth and value. It is NovaGold's shareholders, not Barrick, who should realize the significant potential value from the successful development of NovaGold's projects. Our shareholders understand that the transition to becoming a producing company entails risks, which are reflected in NovaGold's current development-stage valuation. There are also substantial rewards to appropriately managing those risks, and NovaGold has demonstrated

its ability to successfully execute on its business plans and consistently create shareholder value.

"Members of our project development team have successfully built and operated some of the world's largest gold and copper mines. **With our Rock Creek gold mine currently under construction and our Galore Creek copper-gold-silver project in the final stages of its environmental assessment, NovaGold is poised to make the transition to production and deliver that value to our shareholders.**

\*     \*     \*

Throughout the hostile Barrick bid, NovaGold has continued to focus on advancing its projects. **The Company has achieved a number of significant milestones since the bid was announced in July, and has several value-adding milestones targeted for the next few quarters, including to:**

- **Finalize selection of a joint venture and financing partner for Galore Creek and obtain Board approval for start of construction, upon receipt of permits**

- **Release results from the 2006 drilling programs at Donlin Creek and Galore Creek, which should increase the resource estimates at both projects as Inferred Resources are converted to Measured and Indicated Resources** (Emphasis added.)

48.     On November 29, 2006, the Company issued a press release entitled "Barrick's Inadequate Hostile Bid for NovaGold to Expire December 6 - NovaGold Committed to Delivering Shareholder Value."   Therein, the Company again cited Galore Creek as a substantially undervalued asset vis-a-vis the hostile takeover, stating, *inter alia*:

"Over the last four months, NovaGold's shareholders have consistently rejected Barrick's wholly inadequate takeover bid, which is at a discount to the Company's recent trading prices and pre-bid share price highs," said Rick Van Nieuwenhuyse, President and CEO of NovaGold. "A majority of our shareholders have agreed that the Company's world-class assets and production growth profile are worth more than US$16. With the hostile Barrick bid soon to be behind us, we can now focus all of our efforts on delivering shareholder value by executing our long-term strategic plan, and on our objective to continue our tradition of delivering superior returns to shareholders.

"**This is an exciting time for NovaGold. We have significantly advanced our projects over the past few months and reduced overall development risk.** As consistently demonstrated in the past, we will continue to run the Company for

the benefit of our shareholders, advancing our projects toward production, maximizing new opportunities and enhancing shareholder returns."

*        *        *

**Considering all of NovaGold's assets, including Galore Creek, its interest in Donlin Creek, the Company's Nome Operations and its Ambler project, the Barrick bid substantially undervalues NovaGold. Producing gold companies with significant base metal credits currently trade at some of the highest multiples in the sector.** With a target to begin production at the Company's Nome Operations in mid-2007 at over 100,000 ounces of gold per year, **NovaGold's production is targeted to grow to over 1 million ounces of gold and more than 400 million pounds of copper annually once the Galore Creek and Donlin Creek projects are in operation and fully producing.** Net of copper credits, NovaGold expects to produce gold at a total cash cost of less than US$100 per ounce, using long-term metals prices.

With Barrick's inadequate bid soon to expire, major value-adding milestones targeted for the next few quarters should deliver enhanced shareholder value. These milestones include:

- **Finalizing selection of a joint venture and financing partner for Galore Creek and obtaining Board approval for start of construction, upon receipt of permits**

- Releasing results from the 2006 drilling programs at Donlin Creek and Galore Creek, which should increase the resource estimates at both projects and convert Inferred Resources to the Measured and Indicated category (Emphasis added.)

49.    On December 5, 2006, the Company reiterated its contention that Galore Creek was a substantially undervalued asset vis-a-vis the hostile takeover bid in its press release entitled "NovaGold Recommends Shareholders Continue to Reject Barrick's Hostile Bid." Therein, the Company stated, *inter alia*:

Over the past several years, NovaGold has built the management expertise to be able to finance, construct and operate its projects and successfully make the transition from development to production. Rock Creek can provide cash flow to run the Company, and **with a financing and joint venture partner anticipated for Galore Creek in the first quarter of 2007, we plan to build that project on time and on budget. Galore Creek can then provide cash flow to build Donlin Creek.**

17

**Management is confident that we can finance these projects and manage the risks associated with their construction, thereby delivering significantly more shareholder value than Barrick's low-ball US$16 bid. NovaGold's goal is to become North America's next high-quality mid-tier gold and copper producer.**

\*     \*     \*

Despite more than four months of posturing, Barrick has failed to address the key factors that continue to make its hostile bid undervalued:

- Failure to recognize asset quality: **The Barrick bid does not pay full value for NovaGold's high-quality, low-cost and strategically located world-class assets, including Galore Creek,** NovaGold's 70% interest in Donlin Creek and its 51% interest in Ambler, along with the Company's Nome Operations.

\*     \*     \*

NovaGold notes that the gold and copper stock indices have increased 20 to 35% since the June/July and October market lows. Furthermore, NovaGold has completed a number of significant milestones since the bid was announced in July. These include: increases in NovaGold's Measured and Indicated Resources, the start of construction at Rock Creek, an economic assessment of the Donlin Creek project, **completion of key permitting steps at Galore Creek and the release of an independent Feasibility Study confirming Proven and Probable Reserves and the economics of the Galore Creek project.** (Emphasis added.)

50.    On December 14, 2006, the Company issued a press release entitled "NovaGold's 2006 Galore Creek Drill Campaign Completed, Expands Deposits." Therein, the Company touted the progress being made at Galore Creek, and reiterated the results of the Feasibility Study stating, *inter alia*:

Galore Creek Feasibility Study

**A final Feasibility Study for the Galore Creek project, completed by Hatch Ltd. in October 2006, provided Proven and Probable Reserves for NovaGold and confirmed the economics and mine plan of the Galore Creek project.**

\*     \*     \*

**When compared to the October 2005 Galore Creek Preliminary Economic Assessment, estimated production for copper and gold + silver increased by 16% and 19%, respectively. Average annual after-tax net cash flows increased from US$200 million per year to over US$400 million per year for**

18

**the first 5 years of production at the assumed long-term metals prices for each base case.**

**The Feasibility Study estimates that the total capital cost to develop the Galore Creek project will be approximately US$1.8 billion between 2007 and 2010.** (Emphasis added.)

51.     On February 9, 2007, the Company issued a press release entitled "NovaGold's Galore Creek Project Update."  Therein, the Company touted the preparations being made at Galore Creek for the pending construction:

> NovaGold . . . today reported that its Galore Creek copper-gold-silver project in northwestern British Columbia is rapidly advancing toward the start of construction in the second quarter of 2007, upon receipt of permits. The project is in the last stages of permitting, with the final public comment and review period underway. Final assay results from the 2006 drilling program have been received, and a resource update is targeted for the end of the first quarter.
>
> *       *       *
>
> Peter Harris, Senior VP and Chief Operating Officer of NovaGold, commented on the project, construction and operations teams that will build and run the Galore Creek project. "Many of our team members have known and worked with each other on numerous projects. They have a track record of success throughout their careers, working on well-known projects around the world. It is immensely rewarding, in these days of tight labour markets and extensive heavy construction activity, that NovaGold has attracted a team with such experience and talent. **Galore Creek is an exceptional project, and the end result will bring phenomenal value to NovaGold's employees, its shareholders, the Tahltan Nation and local communities, and the British Columbia economy."**
>
> *       *       *
>
> **"The newly formed Project Development Team has been reviewing the Feasibility Study capital costs associated with both Phase 1 and Phase 2 work programs,"** continued Mr. Harris. **"Based on up-to-date quotes from contractors, the team has determined that the Feasibility Study budget is sufficient for construction of the Galore Creek project within current contingency allocations. This review will continue as basic and detailed project engineering proceeds."** (Emphasis added.)

52.     On February 28, 2007, the Company issued a press release entitled "NovaGold Year-End Financial Results and Project Update" and concurrently filed a report with the SEC on

Form 6-K reporting the Company's fiscal 2006 financial results and touting the Company's purported progress in the construction of the Galore Creek project and the positive effect the Galore Creek project would have on the Company, and citing the Feasibility Study.  This press release stated, *inter alia*:

> The last 12 months have certainly been exciting for NovaGold and its shareholders. In 2006 the Company continued to make significant headway at its three most advanced projects, acquired a "green" power company, survived a hostile takeover attempt and delivered outstanding shareholder returns. **NovaGold is exceptionally well positioned in 2007 to take full advantage of the bull market in gold, silver and copper, leveraging its large and growing North American reserve and resource base that will continue to add significant new value for shareholders,** and for the communities in which it works.
>
> \*      \*      \*
>
> **A final Feasibility Study for Galore Creek was completed in October 2006, confirming the economics of the project and providing Proven and Probable Reserves. NovaGold completed over 36,000 meters of drilling at Galore Creek in 2006, demonstrating significant expansion potential beyond the currently defined pits. The 2007 drilling program is budgeted for 15,000 meters of follow-up drilling.**
>
> \*      \*      \*
>
> **NovaGold made exceptional progress over the past year on all of its projects, and continues to build its experienced construction, operations and management teams. The Company will continue to advance its projects in 2007, aiming to create shareholder value by initiating construction at Galore Creek and achieving market revaluation as a gold producer.** NovaGold is well positioned to become North America's next mid-tier gold and copper producer. We look forward to reporting on further positive developments on the Company's projects during the coming months.
>
> \*      \*      \*
>
> **At the Galore Creek project, the Company is in the later stages of obtaining approval to construct a mine on the property that will have a nominal throughput of 65,000 tonnes per day that is planned to produce annually, when in operation, 432 million pounds of copper, 341,000 ounces of gold and 4 million ounces of silver during the first five years of mine life.**
>
> \*      \*      \*

In the Galore Creek Feasibility Study a total of $375 million (US$303 million) was planned to be expended in 2007, and an additional $50 million was expected to be spent in 2007 by Coast Mountain on power line construction necessary for Galore Creek operations, excluding any bonding costs. The NovaGold construction team has rescheduled and re-estimated costs for 2007 based on the longer development schedule contemplated above. This rescheduling contemplates a total of $262 million being expended in 2007 and an unchanged overall construction budget of $2.2 billion (US$1.8 billion), with start-up of operations in 2012 rather than 2011. (Emphasis added.)

53.     On March 28, 2007, the Company issued a press release entitled "NovaGold Expands Galore Creek Resource Estimate," in which the Company touted even greater deposits and expansion potential at the Galore Creek project, stating, *inter alia*:

**NovaGold Resources Inc. (TSX,AMEX: NG) has significantly increased the Measured, Indicated and Inferred Resource estimates at its Galore Creek copper-gold project in northwestern British Columbia based on drilling completed in 2006.** Proven and Probable Reserves for the project were estimated in the October 2006 Galore Creek Feasibility Study, and have not been updated with this estimate.

**"This new resource estimate continues to show the expansion potential of the world-class Galore Creek deposit,"** said Joe Piekenbrock, Vice President of Exploration for NovaGold. **"NovaGold's exploration team will focus on further expansion at Galore Creek in 2007, with particular attention to increasing projected metal production during the first 10 years of operation. NovaGold has budgeted for a minimum of 15,000 meters of drilling at the Galore Creek deposit in 2007."** (Emphasis added.)

54.     The following day, on March 29, 2007, the Company announced its plans to purchase all of the mining claims at Galore Creek in a press release entitled "NovaGold Exercises Option to Purchase Mining Claims at Galore Creek." Therein, the Company, *inter alia*, stated:

"Exercising this option further strengthens NovaGold's land position at the Galore Creek deposit and brings us one step closer to construction of this world-class project," said Rick Van Nieuwenhuyse, President and CEO of NovaGold. "We continue to meet our targets and remain on task, and the Company continues very active discussions with a number of potential joint venture partners for the project. . . ."

55.     On April 16, 2007, the Company issued a press release entitled "NovaGold First Quarter Financial Results and Project Update," and concurrently filed a report with the SEC on Form 40-F reporting the Company's financial results and touting the Company's purported progress in the construction of the Galore Creek project, stating:

> **NovaGold is finalizing initial Galore Creek project financing plans so its Board of Directors can make a construction decision once permits are received later this quarter. The Galore Creek Construction team is making final preparations to begin construction. Major equipment has been mobilized to site and critical contracts have been negotiated**.
>
> *               *               *
>
> NovaGold made exceptional progress in the first quarter of 2007, and continues to build its experienced construction, operations and management teams. **NovaGold is well positioned to become North America's next mid-tier gold and copper producer as it moves toward construction at Galore Creek and production at Rock Creek.** We look forward to reporting on further positive developments on the Company's projects during the coming months.  (Emphasis added.)

56.     On April 16, 2007, the Company issued a press release entitled "NovaGold Announces Common Share Offering," announcing its intention to hold a common stock offering in part to finance the Galore Creek project.  Therein, the Company, *inter alia*, stated:

> The net proceeds from the offering will be used to fund further exploration at, and initial construction of, the Galore Creek project, to fund general exploration and development on the Company's other projects and for general corporate purposes.

57.     Also on April 16, 2007, the Company filed with the SEC a registration statement on Form F-10/A for the public offering of up to $500 million of the Company's debt and equity securities (the "April 16 Registration Statement").  The April 16 Registration Statement was signed by Defendants Nieuwenhuyse and MacDonald.  The April 16 Registration Statement represented that the Company intended to use the proceeds from offering to fund its development of the Galore Creek project, as follows:

> The net proceeds of any offering of Securities under a Prospectus Supplement will be used to fund further exploration at, and initial construction of, the Galore

Creek project, to fund general exploration and development on the Company's other projects and for general corporate purposes.

58.    With respect to the Galore Creek project, the April 16 Registration statement

made the following representations:

> The Company's **Galore Creek project is the subject of a feasibility study and construction is expected to start following receipt of permits and approvals**….
>
> •      Galore Creek is a large copper-gold deposit located in northwestern British Columbia with proven and probable reserves of 5.3 million ounces of gold, 92.6 million ounces of silver and 6.6 billion pounds of copper. The project's measured and indicated resources, inclusive of **proven and probable reserves, total 8.3 million ounces of gold, 141.8 million ounces of silver and 10.2 billion pounds of copper**. In addition, Galore Creek hosts inferred resources of 5.3 million ounces of gold, 85.4 million ounces of silver and 4.4 billion pounds of copper.
>
> *      *      *
>
> Feasibility Study
>
> In October 2006, Hatch Ltd., an independent engineering services company, together with a number of specialized consultants, completed a feasibility study (the "Galore Creek Feasibility Study") for the Galore Creek project. This study confirms the economic viability of a conventional open-pit mining operation using long-term metals prices and provides the basis for the Company's first proven and probable reserves for copper, gold and silver.  (Emphasis added.)

59.    On April 24, 2007, the Company issued a press release entitled "NovaGold Closes

US$203 Million Public Offering" announcing that the common stock offering had closed, and

that US$203 had been raised.  This release stated, *inter alia*:

> The net proceeds of this offering of approximately US$194 million (C$219 million), after deducting underwriters' fees and estimated expenses, will be used to fund further exploration at, and initial construction of, the Galore Creek Project, to fund general exploration and development of the Company's other projects and for general corporate purposes.

60.     On May 23, 2007, the Company issued a press release announcing the formation of a limited partnership with Teck for the construction of the Galore Creek project, and touted the purported progress the Company had made to date, as follows:

**Galore Creek is expected to produce 432 million pounds of copper, 341,000 ounces of gold and 4 million ounces of silver annually for the first 5 years of production, transitioning NovaGold to a midtier producer** and significantly increasing Teck Cominco's annual copper and gold production. With over 540 million tonnes of reserves and approximately 1 billion tonnes of resources, there remains considerable potential to increase annual production and extend the mine life beyond 20 years.

**"This partnership is another key milestone for NovaGold and great news for the people of British Columbia,"** said Rick Van Nieuwenhuyse, NovaGold's President and Chief Executive Officer. **"NovaGold chose Teck Cominco as its partner not just because of Teck's size and expertise, but also because of its corporate culture and a shared commitment to responsible mining. Together, we are ensuring Galore Creek will be developed as a world-class mine that will bring outstanding benefits to the Tahltan Nation, local communities and the shareholders of both NovaGold and Teck Cominco for decades to come."**

\*     \*     \*

"NovaGold has worked closely with the Provincial and Federal regulators, our First Nations partners and local communities to complete a thorough environmental assessment and permitting process over the past three years," said Peter Harris, Senior Vice President and Chief Operating Officer of NovaGold. **"Since completion of the Feasibility Study last fall, NovaGold has been preparing for the start of construction to ensure its ability to maximize the 2007 construction season. With those preparations and our partnership with Teck Cominco now in place, full construction activities should be able to begin shortly."** (Emphasis added.)

61.     On June 5, 2007, the Company issued a press release and concurrently filed a report with the SEC on Form 6-K touting the Company's purported progress in the construction of the Galore Creek project, as follows:

**"Since starting work on Galore Creek in 2003, NovaGold has tripled the size of the resource base, completed a thorough environmental and social assessment and moved diligently through the comprehensive permitting process,"** said Rick Van Nieuwenhuyse, President and CEO of NovaGold. "As equal partners, NovaGold and Teck Cominco will work closely with the Tahltan Nation and the Government of British Columbia to build a world-class mine that

brings benefits to the province, local communities and our shareholders for decades to come.

"Galore Creek is an exciting project, and NovaGold would like to acknowledge the hard work and contributions from everyone involved who helped advance this project from an exploration stage to construction. **We look forward to updating the market as the project advances toward its production target of 2012.**" (Emphasis added.)

62.     On July 16, 2007, the Company issued a press release reporting its financial

results for the quarter ended May 31, 2007 and touting the Company's purported progress in the

construction of the Galore Creek project, as follows:

> Over the past year NovaGold has completed a series of major risk-reducing development milestones on the way to achieving its long-term business plan of becoming a low-cost, mid-tier gold and copper producer. By year end NovaGold is targeting to become a junior-level producer at its first mine in Nome, Alaska, with gold production estimated at 100,000 ounces per year. **With the completion of construction of the Galore Creek copper-gold mine in British Columbia, NovaGold would become a mid-tier level gold and copper producer with annual production estimated at 325,000 ounces of gold, 216,000 pounds of copper and 2 million ounces of silver.** Upon completion of construction at NovaGold's Donlin Creek gold project, the Company's production would grow to potentially more than 1 million ounces of gold per year.
>
> **The first half of 2007 has been an exciting one for the Company. In particular, the announcement of the partnership with Teck Cominco Limited to build the Galore Creek mine has garnered significant market attention and underscored the project's world-class potential.** With continued development at Galore Creek and Rock Creek on schedule to achieve production this year, the second half of 2007 should be equally exciting. We look forward to reporting on further progress on the Company's projects during the coming months.  (Emphasis added.)

63.     On July 17, 2007, NovaGold filed with the SEC a Form 6-K in which the

Company reported its financial and operating results for the quarter ended May 31, 2007, along

with an update on the Company's development activities for the Galore Creek Copper-Gold-

Silver Project, as follows:

> **In the Galore Creek Feasibility Study, completed by Hatch Ltd. in October 2006, a total of $375 million (US$303 million) was planned to be expended in 2007, and an additional $50 million was expected to be spent in 2007** by

NovaGreenPower Inc. (formerly, Coast Mountain Power Corp.) on power line construction necessary for Galore Creek operations, excluding any bonding costs. **The NovaGold construction team in February 2007 rescheduled and re-estimated costs for 2007 based on the development schedule contemplated above. This rescheduling contemplates a total of $262 million being expended in 2007 and an unchanged overall construction budget of $2.2 billion with start-up of operations in 2012 rather than 2011.** In addition $10 million of environmental bonding has been provided.  (Emphasis added.)

64.     On August 2, 2007, the Company issued a press release and concurrently filed a report with the SEC on form 6-K, touting the purported progress of the Galore Creek project, as follows:

Located in northwestern British Columbia, **Galore Creek is one of the largest undeveloped copper-gold projects in the world. With production targeted for 2012, Galore Creek is expected to produce in excess of 430 million pounds of copper, 340,000 ounces of gold and 4 million ounces of silver annually for the first five years of operation.** Based on current reserves of over 540 million tonnes and resources of approximately 1 billion tonnes, there is potential to maintain the initial production rates beyond year five and extend the current 20+ year mine life.

**Galore Creek road construction is progressing well, with 27 kilometers of road and bridges pioneered and an additional 55 kilometers of road right-of-way cleared for construction.** The first permanent bridge structure across the Iskut River is complete and awaiting inspection and four of five construction camps are completed and occupied, with close to 600 people working on the project. Management anticipates the project will create up to 1,000 jobs during the construction phase and approximately 500 full-time jobs during operation. (Emphasis added.)

65.     The statements contained in ¶¶ 41 – 64 were materially false and misleading when made because Defendants failed to disclose:

(1) contrary to the Defendants' representations, the Company had failed to make reasonable estimates as to capital expenditures necessary to mine Galore Creek, which were underestimated by more than $3 billion.

(2) the development of Galore Creek was not proceeding on schedule and was a year and a half to two years behind schedule;

(3) the results of the Hatch Feasibility Study announced on October 25, 2006 materially understated the capital costs and construction schedule required to successfully mine the Galore Creek site;

(4) Defendants knew but failed to disclose that the Hatch Feasibility Study was not a "Bankable Feasibility Study."

(5) NovaGold used its Hatch Feasibility Study as a marketing tool to fend off Barrick Gold's takeover bid and to artificially support its stock price when Defendants knew or were reckless in disregarding that the Hatch Feasibility Study failed to: (i) use reasonable discount rate assumptions that reflected the Company's true cost of capital; (ii) evaluate and discount the major risks associated with development of the Galore Creek project; and (iii) failed to use realistic timeliness for permitting and construction of the project.

(6) the Company lacked adequate internal and controls;

(7) as a result of the foregoing, the Company's disclosures in, *inter alia*, its SEC filings were materially false and misleading at all relevant times; and

(8) as a result of the foregoing, the Company's statements about its operations and future business prospects were lacking any reasonable basis when made.

**The Truth Begins to Emerge**

66.    On November 26, 2007, the Company shocked the market when it issued a press release announcing that it was suspending construction of the Galore Creek mine because the project is no longer deemed economically feasible.  Despite the feasibility study by Hatch which estimated the costs of construction at Cdn $2.2 billion, a follow up study by AMEC Americas Ltd. ("AMEC"), which was retained by NovaGold in April 2007, determined that the projected

costs would be approximately Cdn $5 billion.  Specifically, the November 26, 2007 press release

stated:

> **NovaGold Resources Inc.** (AMEX: NG, TSX: NG) and Teck Cominco Limited (TSX: TCK.A, TCK.B; NYSE: TCK) **today announced they will suspend construction activities at the Galore Creek copper-gold-silver project in northwestern British Columbia. A recent review and completion of the first season of construction indicate substantially higher capital costs and a longer construction schedule for the project. This, combined with reduced operating margins as a result of the stronger Canadian dollar, would make the project, as now conceived and permitted, uneconomic at current consensus long-term metal prices.** NovaGold and Teck Cominco continue to view the property as a substantial resource and will initiate a comprehensive review to evaluate alternative development strategies. The Galore Creek partnership will conduct an orderly suspension of construction activities and will work with employees, the Tahltan Nation, local communities and other stakeholders to minimize the impacts of this decision.

> **In April 2007, NovaGold retained AMEC Americas Limited ("AMEC"), an independent engineering firm, to review the October 2006 Galore Creek Feasibility Study** and commence project engineering. The review covered the entire project with a focus on construction of the mine facilities and tailings and water management structures.

> By mid-October 2007, AMEC's preliminary work indicated it expected capital costs would be significantly higher than originally estimated. As a result, NovaGold and Teck Cominco commenced a project strategy review, involving seven engineering teams, to assess the AMEC work. **Estimated costs have continued to increase during this review, and NovaGold and Teck Cominco now have sufficient information to indicate that the capital cost of the project could approach as much as $5 billion.** The engineering review is ongoing.

> Although there have been changes in scope from the original feasibility study, **the largest portion of the capital cost increase is related to the complex sequencing of activities necessary to build the tailings dam and water management structures, and the resulting extension of the construction schedule by 18 to 24 months. The project has also been affected by the rapidly escalating capital costs affecting major construction projects world-wide.**

> In light of these developments, NovaGold and Teck Cominco have agreed to suspend construction and amend the terms of Teck Cominco's earn-in obligations in connection with the project. Under the amended arrangements, Teck Cominco will invest an additional $72 million in the partnership to be used over the next five years principally to reassess the project and evaluate alternative development strategies. In addition, Teck Cominco's sole funding of other project costs

incurred after August 1, 2007 will now total $263 million. NovaGold and Teck Cominco will share the next $100 million of project costs 33% and 67% respectively, and will share costs proportionately thereafter.

"NovaGold has worked for years to advance this project toward production," said Rick Van Nieuwenhuyse, President and CEO of NovaGold. "We reached this decision after considerable review and we share the disappointment of our employees, the Tahltan Nation, all stakeholders and local communities. We will work closely with Teck Cominco to unlock the potential of this world-class resource. NovaGold will continue to add value for shareholders by advancing the other projects in our portfolio, particularly the Donlin Creek project in Alaska." (Emphasis added.)

67.     The Company's suspension of the Galore Creek project was completely unexpected.  Following this disclosure, analysts blasted the Company.  For instance, Citigroup metals analysts John Hill and Graham Wark declared, "The magnitude of underestimation is shocking to us. . . ."

## Loss Causation

68.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

69.     During the Class Period, Plaintiff and the Class purchased NovaGold securities at artificially inflated prices and were damaged thereby when the price of the Company's securities collapsed as information correcting the defendants' misstatements removed the inflation caused by the defendants' misstatements.

70.     Specifically, the price of NovaGold shares plummeted $10.76 per share from its previous close of $20.24 per share on November 23, 2007, to close at $9.48 per share on November 26, 2007, representing a single-day decline of more than 53 percent on unusually high volume of 20,541,200 shares traded.  This drop was caused by the disclosure of the falsity of the Company's prior statements regarding the costs for constructing and the economic viability of the Galore Creek project.  The curative disclosures regarding the Galore Creek project caused

economic harm to investors who purchased NovaGold stock at artificially inflated prices during the Class Period and suffered a loss when the truth was revealed resulting in a collapse of NovaGold's stock price.  The stock has never recovered and (as of August 5, 2008) is trading under $10 per share.

<strong><u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u></strong>

71.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased NovaGold securities between October 25, 2006 and November 23, 2007, inclusive (the "Class Period") and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

72.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, NovaGold's securities were actively traded on the American and Toronto Stock Exchanges.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by NovaGold or, its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

73.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

74.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation.

75.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of NovaGold; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

76.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**SCIENTER ALLEGATIONS**

77.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding NovaGold, their control over, and/or receipt and/or modification of NovaGold's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning NovaGold, participated in the fraudulent scheme alleged herein. Defendants were motivated to keep the price of the Company's stock to ward off Barrick Gold's takeover bid.

78.    By knowingly deceiving the market as to the capital costs and construction schedule associated with successfully mining the Galore Creek and as to the validity of the feasibility study announced on October 25, 2006 which materially understated the same, the Defendants were able to:

(a) artificially inflate the Company's stock price throughout the Class Period as set forth herein;

(b) misrepresent the Company's prospect causing investors to reject Barrick Gold's tender offer; and

(c) justify its April, 2007 common share offering which raised nearly $200 million dollars for the Company in mere days.

**Applicability of Presumption of Reliance:**
**<u>Fraud On The Market Doctrine</u>**

79.    At all relevant times, the market for NovaGold securities was an efficient market for the following reasons, among others:

(a)  NovaGold securities met the requirements for listing, and were listed and actively traded on the American and Toronto Stock Exchanges, which are both highly efficient markets;

(b)  As a regulated issuer, NovaGold filed periodic public reports with the Canadian regulatory agencies including Ontario Securities Commission, British Columbia Securities Commission and the Toronto Securities Exchange as well as the SEC;

(c)  NovaGold regularly communicated with public investors _via_ established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)  NovaGold was followed by at least four securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

80.    As a result of the foregoing, the market for NovaGold securities promptly digested current information regarding NovaGold from all publicly-available sources and reflected such information in the price of NovaGold securities.  Under these circumstances, all purchasers of NovaGold securities during the Class Period suffered similar injury through their purchase of NovaGold securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

81.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of NovaGold who knew that those statements were false when made.

## FIRST CLAIM

## Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

82.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

83.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase NovaGold's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

84.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for NovaGold's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

85.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about NovaGold's financial well-being, business relationships, and prospects, as specified herein.

86.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of NovaGold's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about NovaGold and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of NovaGold's securities during the Class Period.  The Defendants had the motivation and opportunity to commit fraud as stated herein.

87.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's operations (including the costs associated with developing its mines) at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

88.     The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing NovaGold's financial well-being, business relationships, and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' misstatements of the Company's operations and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain

such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

89.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of NovaGold's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of NovaGold's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired NovaGold's securities during the Class Period at artificially high prices and were damaged thereby.

90.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that NovaGold was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their NovaGold securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

91.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

92.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act Against the Individual Defendants

93.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

94.     The Individual Defendants acted as controlling persons of NovaGold within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

95.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

96.     As set forth above, NovaGold and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### THIRD CLAIM

### Violation of Section 11 of The Securities Act Against Defendants NovaGold, Nieuwenhuyse and MacDonald

97.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

98.     This Count is brought pursuant to § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all persons or entities who purchased or otherwise acquired NovaGold common stock pursuant or traceable to the April 16 Registration Statement for the Secondary Offering.  In this Count, Plaintiffs do not assert that the Defendants are liable for fraudulent or intentional conduct.

99.     The April 16 Registration Statement, as set forth above, was inaccurate and misleading, contained untrue statements of material facts, and omitted to state other facts necessary to make the statements contained therein not misleading, and/or concealed and failed to adequately disclose material facts as described above.  In particular, as set forth above, the April 16 Registration Statement were untrue and misleading in that they failed to accurately disclose known trends or uncertainties that had or that Defendants reasonably expected would have a material favorable or unfavorable impact on the development of the Galore Creek project into a productive copper-gold-silver mine, misstated and understated the true costs of developing

the Galore Creek project based on the Hatch Feasibility Study, which, unbeknownst to investors, was nothing more than a marketing tool and was not a bankable feasibility study, and failed to disclose that the Company lacked adequate internal controls and procedures to ensure that the statements about the Galore Creek project in the April 16 Registration Statement were accurate and truthful.  These misstatements rendered the statements made in the April 16 Registration Statement materially false and misleading.

100.    Defendant NovaGold, as the issuer of the April 16 Registration Statement, is strictly liable for the false and misleading statements therein.

101.    Defendants Nieuwenhuyse and MacDonald signed the April 16 Registration Statement for the secondary offering, and therefore, are each liable to Plaintiff and the other members of the Class who purchased or otherwise acquired NovaGold common stock pursuant to or traceable to the April 16 Registration Statement for the various misstatements and omissions contained therein under § 11 of the Securities Act.

102.    Plaintiff and the other members of the Class purchased or otherwise acquired NovaGold common stock pursuant to or traceable to the April 16 Registration Statement.  At the time they purchased or acquired NovaGold common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the inaccurate and misleading statements and omissions alleged herein.

103.    Less than one year has elapsed from discovery of the violations and facts upon which this Complaint is based to the time of filing of this action.  Less than three years has elapsed from the time that NovaGold common stock was offered bona fide to the public to the time of filing of the action.

104.   By reason of the conduct alleged herein, each Defendant named in this Count violated § 11 of the Securities Act.  As a direct and proximate result of Defendants' conduct, Plaintiffs and the other members of the Class have sustained substantial damage in connection with their purchase and/or acquiring of the common stock pursuant to or traceable to the April 16 Registration Statement.

## FOURTH CLAIM

### For Violations Of § 15 Of The Securities Act Against Defendants Nieuwenhuyse and MacDonald

105.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

106.   This Count is brought pursuant to § 15 of the Securities Act, on behalf of all persons or entities who purchased or otherwise acquired NovaGold common stock pursuant to or traceable to the April 16 Registration Statement.  In this Count, Plaintiff does not assert that the Defendants are liable for fraudulent or intentional conduct.

107.   Each of the Defendants named in this Count was a control person of NovaGold by virtue of his/her executive and/or directorial positions at the Company.  The Defendants named in this Count had the power, and exercised the same, to cause NovaGold to engage in the violations of law complained of herein and were able to and did control the contents of the April 16 Registration Statement.

108.   By reason of their senior executive positions at NovaGold and their actual control over the Company's day-to-day operations, financial statements, public filings and their intimate involvement and control over the April 16 Registration Statement, each of the Defendants named in this Count is jointly and severally liable to Plaintiff and the other members of the Class as a result of the wrongful conduct alleged herein.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 7, 2008                                    Respectfully submitted,

**BRODSKY & SMITH, LLC**

By:*s/ Evan J. Smith (ES3254)*
Evan J. Smith, Esquire
240 Mineola Boulevard
Mineola, NY 11501
516-741-4977
516-741-0626 (fax)

**SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP**
Darren J. Check, Esquire
Naumon A. Amjed, Esquire
Steven D. Resnick, Esquire
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
610-667-7056 (fax)

*Attorneys for Plaintiff, Rudolph T. Textor*