UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| IN RE NOVAGOLD RESOURCES INC. | ) | MASTER FILE |
| SECURITIES LITIGATION | ) | |
| | ) | 1:08-CV-7041 (DLC) (JCF) |
| This Document Relates to: | ) | |
| | ) | |
| All Actions | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**U.S. LEAD PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**

**LABATON SUCHAROW LLP**
Jonathan M. Plasse  (JP 7515)
jplasse@labaton.com
Joseph A. Fonti  (JF 3201)
jfonti@labaton.com
Nicole M. Zeiss (NZ 3894)
nzeiss@labaton.com
140 Broadway
New York, NY 10005
Tel:  (212) 907-0700
Fax:  (212) 883-7044

*Counsel for Lead Plaintiff New Orleans*
*Employees' Retirement System and Lead*
*Counsel for the Class*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

I.    BRIEF PROCEDURAL HISTORY ...................................................................... 4

    A.    The Allegations ............................................................................................ 4

    B.    The Canadian Actions .................................................................................. 6

    C.    Dispositive Motion Practice ......................................................................... 6

    D.    Discovery at the Time of Settlement ........................................................... 7

    E.    Motion for Class Certification ...................................................................... 7

    F.    Settlement Negotiations and Overview of the Settlement ....................... 7

    G.    Summary of the Proposed Settlement ........................................................ 8

ARGUMENT ...................................................................................................................... 10

I.    THE PROPOSED SETTLEMENT SATISFIES THE CRITERIA FOR
    PRELIMINARY APPROVAL ............................................................................ 10

    A.    The Proposed Settlement Is the Result of Well Grounded, Good
        Faith, Arm's-Length Negotiations .......................................................... 11

    B.    The Proposed Settlement Falls Well Within the Range of
        Reasonableness and Warrants Notice and a Hearing on Final
        Approval ................................................................................................... 12

    C.    The Settlement Has No Obvious Deficiencies ......................................... 13

II.    THE U.S. COURT SHOULD PRELIMINARILY CERTIFY THE U.S. CLASS ........... 14

    A.    Standards Applicable to Class Certification ............................................ 14

    B.    This Action Meets the Requirements of Rule 23(a) ................................ 15

        1.    Rule 23(a)(1): the U.S. Class Is So Numerous That Joinder of All
            Members Is Impracticable ............................................................... 15

2.      Rule 23(a)(2): Questions of Law or Fact Are Common to the U.S. Class ................................................................................................ 15

3.      Rule 23(a)(3): U.S. Lead Plaintiff's Claims Are Typical of the Claims of Other Class Members ................................................ 16

4.      Rule 23(a)(4): New Orleans Will Adequately Protect the Interests of the U.S. Class ................................................................... 17

C.      This Action Meets the Requirements of Rule 23(b)(3) ......................................... 19

1.      Questions of Law or Fact Common to the U.S. Class Predominate Over Any Questions Affecting Only Individual Members ....................... 19

2.      A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy .......................................... 20

D.      U.S. Lead Counsel Should be Appointed Class Counsel Under Rule 23(g) ................................................................................................ 21

III.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICES AND PLAN FOR PROVIDING NOTICE TO THE U.S CLASS ............................................. 22

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

Page(s)

*In re Agent Orange Prod. Liab.*,
    818 F.2d 145 (2d Cir. 1987).....................................................................16

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997).............................................................................19

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988).............................................................................19

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ...............................................................21

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) .............................................................20

*Cromer Fin. Ltd. v. Berger*,
    205 F.R.D. 113 (S.D.N.Y. 2001) .............................................................20

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)....................................................................14

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992)....................................................................17

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).............................................................................14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) .............................................................14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)........................................................23

*In re Initial Public Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) .........................................................10, 11

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...............................10

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997).................................................................. 14

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)......................................................................................19

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................................10

*In re Nortel Networks Corp. Sec. Litig.*,
    No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003) ............................20

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ................................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998).......................................................................................10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................................13

*In re Qiao Xing Sec. Litig.*,
    No. 07 Civ. 7097, 2008 WL 872298 (S.D.N.Y. Apr. 2, 2008) ............................14, 24

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).......................................................................................17

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001) .................................................................................15, 16

*In re SCOR Holding (Switzerland) AG Litigation*,
    537 F. Supp. 2d 556 (S.D.N.Y. 2008)................................................................ *passim*

*In re Stock Exchanges Options Trading Antitrust Litig.*,
    No. 99 Civ. 0962, 2005 WL1635158 (S.D.N.Y. July 8, 2005) ...........................14, 15

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................................12

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    No. 05 Civ. 1898, 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006) ................................20

*In re Telik, Inc. Sec. Litig.*,
    No. 07 Civ. 4819, 2008 WL 4198516 (S.D.N.Y. Sept. 10, 2008) ..............................21

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ................................................................................17

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)....................................................................14, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).........................................................................11

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) .........................................................17, 23

## STATUTES

15 U.S.C. §§ 78u-4 ...........................................................................................1

15 U.S.C. § 78u-4(a)(7) .................................................................................23

Fed. R. Civ. P. 23(a) .............................................................................. *passim*

Fed. R. Civ. P. 23(c) ..........................................................................10, 21, 23

Fed. R. Civ. P. 23(e)(1).................................................................................22, 23

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................21

## OTHER AUTHORITIES

Cornerstone Research, *"Securities Class Action Settlements:*
   *2009 Review and Analysis,"* (2009) ……………………………………….……12

Manual for Complex Litigation (4th) § 21.632 ……...………………………………15

Stephanie Plancich & Svetlana Starykh, *Recent Trends in Securities Class*
   *Litigation: 2009 Year-End Update*, (Dec. 2009) ........................................12

## PRELIMINARY STATEMENT

New Orleans Employees' Retirement System ("New Orleans" or "U.S. Lead Plaintiff")

respectfully submits this memorandum of law in support of its unopposed motion, pursuant to

Rule 23(a) of the Federal Rules of Civil Procedure, for:

> (i) Preliminary approval of the settlement ("Settlement") of this proposed class action ("U.S. Action"), as set forth in the Stipulation and Agreement of Settlement dated as of April 1, 2010 (the "Stipulation"), submitted contemporaneously herewith;

> (ii) Certification of the U.S. Class (defined below) for settlement purposes only; and

> (iii) Approval of the form, substance and the requirements of the proposed Notice of Pendency and Proposed Settlement of Class Actions (the "Notice") and Summary Notice of Pendency and Proposed Settlement of Class Actions ("Summary Notice"), appended as Exhibits 1 and 3 to the proposed Preliminary Approval Order, and the means and methods for disseminating the notices, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq*.

Under the terms set forth in the Stipulation, defendant NovaGold Resources Inc. (the

"Company" or "NovaGold") has agreed to pay C$28 million, approximately US $26.6 million,[1]

(the "Gross Settlement Fund") to secure a global settlement of the claims alleged in the U.S.

Action and those alleged in the related class actions pending in the Ontario Superior Court of

Justice (the "Ontario Court"), styled *Elliott and Kormos v. NovaGold Resources Inc., et. al.*,

Court File No. CV-09-13833, and in the Supreme Court of the British Columbia (the "British

Columbia Court"), styled *Elliot v. NovaGold Resources Inc., et al*, Court File No. VLC-S-S-

097866 (collectively, the "Actions").  In consideration for this payment, the Settlement would

result in the dismissal of the Corrected Consolidated Class Action Complaint, filed on

---

[1] Based upon the exchange rate at the time the agreement in principle to settle was reached.

December 30, 2008 (the "Complaint") with prejudice and the release of all related claims against the defendants in the Actions.

Pursuant to the Settlement, the Court is being asked to certify for settlement purposes only the following class:

> all Persons, other than "Excluded Persons," that: (i) purchased NovaGold common stock on the American Stock Exchange ("AMEX") during the period from October 25, 2005 to and including January 16, 2008 (the "Class Period")[2]; (ii) are United States residents that purchased NovaGold common stock on the Toronto Stock Exchange ("TSX") during the Class Period; or (iii) are United States residents that purchased publicly traded NovaGold common stock by any other means during the Class Period, and were allegedly damaged thereby (the "U.S. Class").

The certification of the British Columbia Class and the Ontario Class, which are comprised of similarly situated investors either resident in Canada or who purchased on the TSX, will be considered by the British Columbia Court and the Ontario Court ("the Canadian Courts").

The Complaint generally alleges that NovaGold violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by issuing false and misleading statements during the Class Period that contained misrepresentations about the economic viability of its largest mining project, Galore Creek. Rick Van Nieuwenhuyse, Robert J. McDonald, Douglas Brown, Peter W. Harris, George Brack, Michael H. Halvorson, Gerald J. McConnell, Clynton R. Nauman and James L. Philip (collectively, the "Individual Defendants") are alleged to be liable as control persons, pursuant to Section 20(a) of the Exchange Act. On November 26, 2007, with construction costs projected at more than double those disclosed in October 2006, NovaGold announced the suspension of mine construction at

---

[2] The U.S. Action and Canadian Actions involved overlapping, but slightly different class periods. The use of the longer Canadian Action (defined below) class period was a material term of the global settlement.

Galore Creek.  As a result of this news, NovaGold's common stock price dropped by over fifty percent.

The Settlement was reached only after U.S. Lead Plaintiff's thorough investigation; aggressive motion practice, extensive fact discovery involving twelve document requests, nine document subpoenas, and the review and analysis of approximately 700,000 pages of documents. The parties also raised and negotiated numerous discovery disputes, including some that required the Court's intervention.  U.S. Lead Plaintiff also filed a motion for class certification and engaged in class discovery.  The attempts to settle the U.S. Action were successful only after several months of hard fought and arm's-length discussions which involved the personal participation of the District Court Judge.

The Settlement provides a substantial recovery that is certainly within the range of possible approvals, especially considering the risk of lesser recovery in the future—a risk greatly increased by NovaGold's lack of capital and issuance of the equivalent of a "going concern" warning in its public filings.  Accordingly, U.S. Lead Plaintiff respectfully requests that this Court enter the proposed Preliminary Approval Order, approving the Settlement at this stage and providing for the dissemination of notice to the U.S. Class.[3]

---

[3] The Proposed U.S. Preliminary Approval Order ("Preliminary Approval Order") also seeks, *inter alia*:

(i) scheduling of a hearing (the "Settlement Hearing") to consider the fairness, reasonableness and adequacy of the proposed Settlement and Plan of Allocation of the Net Settlement Fund ("Plan of Allocation" or "Plan"), U.S. Lead Counsel's application for an award of attorneys' fees and expenses, and New Orleans's application for reimbursement of costs directly related to their representation of the U.S. Class;

(ii) approval of the appointment of the Garden City Group to administer the Settlement;

(iii) approval of procedures by which Persons may request to be excluded from the U.S. Class; and

(iv) approval of procedures for U.S. Class Members to object to the terms of the Settlement, Plan of Allocation, or applications for fees and expenses.

If the Court grants preliminary approval, the U.S. Lead Plaintiff respectfully proposes the following schedule for the various Settlement events:

*(continued … )*

# I.  BRIEF PROCEDURAL HISTORY

## A.  The Allegations

This Action arises from the Defendants' repeated assertions that, based on a purportedly independent feasibility study, NovaGold's massive precious metal mine project at Galore Creek was economically viable, with a low capital cost of C$2.2 billion.

NovaGold allegedly set out to build Galore Creek, the largest untapped gold-silver-copper deposit in the world, hoping to break into the precious mineral production world after years of disappointing results with other mineral properties.  Pursuant to Canadian securities regulations, and in an attempt to secure financing, Defendants retained Hatch Ltd. ("Hatch") to perform a Feasibility Study ("Feasibility Study") to determine the economic viability of the project.  U.S. Lead Plaintiff claimed that due to widespread rising cost estimates that threatened the economic viability of the project, as well as increased complications which drove up the costs

---

( ... continued)

- Mailing of individual Notices and Proof of Claim forms to all Class Members who can be identified through reasonable effort (the "Notice Date"): *10 business days after entry of the last preliminary approval order to be entered by either this Court or the Canadian Courts, which are also considering approval of the Settlement at the request of similar classes of Canadian investors.*

- Publication of the summary notice once in *The Wall Street Journal* and transmitted over PRNewswire*: by the Notice Date.*

- Deadline for submission of requests for exclusion from the Class or objections to the Settlement, Plan of Allocation, or motions for fees and expenses: *July 14, 2010.*

- Deadline for filing motions in support of the Settlement and request for attorneys' fees and incurred expenses:  *7 calendar days before the Settlement Hearing.*

- Settlement Hearing: *At the Court's convenience, but approximately 90 calendar days after the Notice date to enable NovaGold to issue a notice pursuant to the Class Action Fairness Act.*

- Deadline for submission of Proofs of Claim: *September 15, 2010*.

considerably, the Defendants continuously delayed the release of the Feasibility Study. (*See* ¶¶ 1, 51, 57-61, D.E. # 39).[4]

Long before the release of the Study, as NovaGold sought financing for Galore Creek, NovaGold's primary competitor, Barrick Gold Corp. ("Barrick"), launched a hostile takeover bid for NovaGold, thereby substantially increasing the price of NovaGold stock. A few months later, having failed to convince shareholders to tender their shares, Barrick then extended and increased its tender offer. The next day, NovaGold announced the release of the long-awaited Feasibility Study, confirming the viability of Galore Creek at a cost of C$2.2 billion. (*See* ¶¶ 63, 70-72).

Shortly after the Feasibility Study's release, and unbeknown to investors, NovaGold commissioned AMEC Americas Ltd., Hatch's competitor, to conduct a second Feasibility Study, allegedly correcting the known inadequacies and inaccuracies included in the Feasibility Study. At that time, however, NovaGold allegedly continued to tout the Feasibility Study, successfully raising financing through both issuing a secondary offering and arranging a joint venture. (*See* Complaint at ¶¶ 8, 83-87, 90, 141-43, 152).

On November 26, 2007, Defendants disclosed that the project was not economically viable. The actual expected costs were in fact approximately C$5 billion, an increase of 144 percent, causing the immediate shut down of the project. Allegedly as a result of this news, NovaGold's stock price was cut by more than half. On January 16, 2008, NovaGold explicitly discredited the Feasibility Study, advising that it should not be relied upon, and that NovaGold was in the process of issuing a new study. (*See* Complaint at ¶¶ 10, 98-100, 181).

---

[4] References to "¶" are to paragraphs of the Corrected Consolidated Class Action Complaint (D.E. # 39).

B.    **The Canadian Actions**

On October 14, 2009, the Ontario Action was commenced in the Ontario Court by plaintiff Vijay Goyal, represented by the law firm of Sutts, Strosberg LLP ("Ontario Class Counsel"). The defendants in the Ontario Action include NovaGold, the Individual Defendants (except for Harris, NovaGold's Senior Vice President and Chief Operating Officer), Cole E. McFarland (deceased) and Hatch Ltd. The Ontario Action has been assigned to the Hon. Justice L.C. Leitch. A Fresh Statement of Claim was filed in the Ontario Action on December 29, 2009 which, *inter alia*, substituted plaintiffs Philip Elliot and William Kormos for Vijay Goyal. On October 28, 2009, the British Columbia Action was commenced in the British Columbia Court by plaintiff Linda M. Elliott. The law firm of Camp Fiorante Matthews is lead counsel in the British Columbia Action ("British Columbia Class Counsel" and, collectively with Ontario Class Counsel, "Canadian Class Counsel"). The U.S. Action and the Ontario and British Columbia Actions, (collectively, the "Canadian Actions"), stem from the same events.

C.    **Dispositive Motion Practice**

U.S. Lead Plaintiff and Defendants have been vigorously litigating the U.S. Action since the filing of the Complaint on December 30, 2008. On January 23, 2009, each U.S. Defendant moved to dismiss the Complaint. On June 5, 2009, the Court denied Defendants' Motion to Dismiss as related to U.S. Lead Plaintiff's Section 10(b) claim against NovaGold and its Section 20(a) claims against the Individual Defendants. All other claims—including Exchange Act claims against Galore Creek Mining Corporation ("GCMC") and the Individual Defendants, and claims pursuant to the Securities Act of 1933 against NovaGold's Board of Directors, certain of its underwriters, and the Hatch defendants—were dismissed. Additionally, the U.S. Court dismissed all claims of foreign (*i.e.*, non-U.S.) putative class members who purchased NovaGold shares on the TSX.

### D.    Discovery at the Time of Settlement

Following the U.S. Court's decision on Defendants' motions to dismiss, discovery commenced.  On June 30, 2009, U.S. Lead Plaintiff served the first of its twelve document requests upon NovaGold and the Individual Defendants.  U.S. Lead Plaintiff also issued nine document subpoenas to various third-parties during the course of the U.S. Action.  As a result of these efforts, at the time of the Settlement, U.S. Lead Plaintiff has reviewed and analyzed approximately 700,000 pages of documents.

U.S. Lead Plaintiff's discovery demands resulted in a number of disputes concerning, among other topics, the parameters of production, the scope of electronic discovery, and Defendant's application of the attorney-client privilege.  While many of these disputes were resolved through hours of meet and confer conferences between the parties, certain disputes required the U.S. Court's intervention.

### E.    Motion for Class Certification

U.S. Lead Plaintiff moved for class certification on February 5, 2010.  Prior to filing the motion, U.S. Lead Plaintiff and its money manager responded to discovery requests propounded by Defendants and produced records concerning U.S. Lead Plaintiff's sufficiency to serve as the class representative.  Additionally, in support of the motion, U.S. Lead Counsel submitted an expert affidavit by Candace Preston, who opined that NovaGold's common stock traded in an efficient market throughout the Class Period. (*See* Affidavit of Candace L. Preston ("Preston Aff.") (Ex. A to D.E. #88)).

### F.    Settlement Negotiations and Overview of the Settlement

By Order entered November 3, 2008, the Court ordered the parties to the U.S. Action to pursue settlement discussions under the supervision of Magistrate Judge James C. Francis.  The Settlement is the result of three subsequent separate mediation sessions over five months

between U.S. Lead Plaintiff and Defendants.  The first mediation session was held on September 16, 2009 before the Hon. Layn Phillips (D. Okla.) (Ret.), following U.S. Defendant's production of 27,000 pages of hard-copy documents and the exchange of mediation statements informed by the production of those documents.  The parties to the U.S. Action held a second mediation session with Judge Phillips on October 15, 2009, but were again unable to reach a settlement. Following this mediation, NovaGold produced additional documents to U.S. Lead Plaintiff in excess of 650,000 pages, originating in large part from NovaGold's email and electronic files.

On January 22, 2010, the parties to the U.S. Action attended a previously scheduled pre-trial conference before the Court, provided an update of settlement discussions, and advised the Court of their intention to take part in a third mediation in February.  The U.S. Court Judge offered her assistance in the mediation, subject to the Parties' mutual consent.  On February 10, 2010, U.S. Lead Plaintiff and the Defendants exchanged new mediation statements informed by the additional document production, and the parties participated in a mediation session before a mediator, the Hon. Layn Phillips, and the U.S. Court Judge.  That day, U.S. Lead Counsel, Canadian Counsel, Defendants and their insurance carriers engaged in extensive arm's-length settlement negotiations, with active participation from the mediator and the U.S. Court Judge. When the parties reached an impasse, U.S. Court Judge recommended a proposed settlement amount.  The parties accepted U.S. Court Judge's recommendation, thus reaching an agreement in principle.  A memorandum of understanding was then executed.

G.    **Summary of the Proposed Settlement**

The C$28 million Settlement will be funded through insurance policies held by NovaGold.  The only agreements between the U.S. Lead Plaintiff and the Defendants regarding the Settlement are the Settlement Term Sheet, signed by U.S. Lead Counsel, Defendants, and Canadian Class Counsel on February 12, 2010, the Stipulation, submitted herewith, and a

supplemental agreement concerning the circumstance under which the level of exclusions from the Settlement could cause NovaGold to terminate the Settlement. (*See* Stipulation ¶ 40). As is commonly done, the supplemental agreement is not being filed in order to keep the threshold amount confidential and to avoid an intentional trigger by a large shareholder.

The C$28 million in cash, less attorney's fees[5] and any expenses awarded by the Courts, notice and administration expenses, and any tax expenses payable from the Settlement Fund (the "Net Settlement Fund"), will be distributed to Authorized Claimants (*i.e.*, Class Members who file timely and valid Proofs of Claim) in accordance with the Plan of Allocation described fully in the Notice. The Plan of Allocation, which was drafted with the assistance of U.S. Plaintiff's consulting damages expert, takes into account the various alleged disclosure dates and stock drops and treats all potential claimants in a fair and equitable fashion. Each Authorized Claimant will be allocated that percentage of the Net Settlement Fund that such Authorized Claimant's "Recognized Loss" represents in relation to the total claims of all Authorized Claimants who purchased NovaGold's common stock.

---

[5] Prior to the September 2009 mediation, U.S. Lead Plaintiff negotiated with Lead Counsel to limit attorneys' fees to 25% of any recovery. While this agreement was reached prior to the involvement of Canadian Plaintiffs' Counsel in any mediation efforts, and indeed prior to the filing of the Canadian Actions, upon reaching the agreement in principle, U.S. Lead Plaintiff sought that the attorneys' fees for both U.S. Lead Counsel and Canadian counsel not exceed 25% of the settlement in total. As disclosed in the Notice, at the Settlement Hearing U.S. Lead Counsel will make a motion for an award of attorneys' fees not to exceed C$5,975,000 (approximately US$5.7 million) or approximately 21.3% of the Gross Settlement Fund, plus interest and reimbursement of litigation expenses incurred in connection with the prosecution of the U.S. Action in an amount not to exceed C$275,000 (approximately US$261,700), plus interest. Canadian Class Counsel will ask the courts in the Canadian Actions for an award of attorneys' fees, not to exceed C$1,025,000 (approximately US$975,400) or approximately 3.7% of the Gross Settlement Fund, plus interest and reimbursement of applicable taxes, and litigation disbursements incurred in connection with the prosecution of the Canadian Actions in an amount not to exceed C$45,000 (approximately US$43,000), plus interest. The U.S. Lead Plaintiff will also ask the U.S. Court to reimburse it for costs and expenses it incurred in representing the U.S. Class, pursuant to the Private Securities Litigation Reform Act in an amount not to exceed approximately C$1050.90 (US$1,000).

As set forth below, the Settlement meets the standards for preliminary approval as it falls well within the range of possible approvals, was the product of rigorous arm's-length negotiations between experienced counsel and has no obvious deficiencies. The proposed Notices should also be approved given that the notice program is the best practicable under the circumstances. Fed. R. Civ. P. 23(c)(2).

## ARGUMENT

### I.    THE PROPOSED SETTLEMENT SATISFIES THE CRITERIA FOR PRELIMINARY APPROVAL

This Settlement should be preliminarily approved. Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is within the discretion of the district court, to be exercised in accordance with public policy strongly favoring pretrial settlement of class action lawsuits. *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004) (DLC); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

As the Court is well familiar, preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (RWS). The Court's role at this juncture is narrow: to determine whether the Settlement is the product of an informed, arm's-length negotiation and free of obvious deficiencies and, thus, whether it is within the *range* of what might later be found fair, reasonable, and adequate. *Id.* at 102. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is

granted." *In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (SAS). Here, the circumstances underlying the proposed Settlement strongly support preliminary approval.

### A.    The Proposed Settlement Is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations

A proposed class action settlement will enjoy a presumption of fairness where the settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

As the Court is aware by virtue of Judge Cote's role in the final mediation session, the proposed Settlement is the product of extensive arm's-length negotiations that occurred between counsel for the parties over the span of five months. The Settlement was reached after two mediation sessions before Hon. Layn Phillips, an experienced independent mediator, and a third mediation session before both Judge Cote and Judge Phillips. Through U.S. Lead Plaintiff's opposition to the motions to dismiss, review and analysis of approximately 700,000 pages of documents produced by Defendants, and through numerous frank discussions among the parties during the mediation sessions, the Settlement was reached at a point where U.S. Lead Plaintiff and its counsel had well-developed, substantive understandings of the strengths and weaknesses of the claims against Defendants. In short, there is no evidence indicating that the Settlement is not the product of informed and non-collusive negotiations among counsel. Thus, it deserves preliminary approval.

**B.      The Proposed Settlement Falls Well Within the
         Range of Reasonableness and Warrants Notice
         and a Hearing on Final Approval**

The proposed Settlement of C$28 million—the amount proposed as a mediator's

recommendation—is well within the range of reasonableness.  This conclusion is both

quantitative and based on an assessment of the risks inherent in pursuing the litigation of the

Actions and NovaGold's struggle to remain a "going concern."

The C$28 million compares favorably against other securities class action settlements.  A

recent study of settlements in such cases concluded that "the median settlement amount for cases

settled in 2009 remained unchanged from 2008 at $8.0 million" and that overall "[a]lmost 60

percent of post [PSLRA] cases settled for less than $10 million, and more than 80 percent of post

[PSLRA] cases settled for less than $25 million."  (*See* Cornerstone Research, "Securities Class

Action Settlements:  2009 Review and Analysis," at 2-3 (2009) (annexed as Ex. 3, to the

accompanying Declaration of Joseph A. Fonti ("Fonti Decl."), dated April 1, 2010).)   Similarly,

a recent study by NERA Economic Consulting, a firm that frequently provides damages

expertise to defendants in securities fraud cases, also reported that between 1996 and 2009,

median settlement amounts in securities fraud class actions ranged from $3.7 million to $9.4

million.  (*See* Stephanie Plancich & Svetlana Starykh, *Recent Trends in Securities Class

Litigation: 2009 Year-End Update*, at 15 (Dec. 2009); (*See* Fonti Decl., Ex. 2).

Continued litigation against Defendants would be subject to both the extraordinary risks

of complex securities litigation, given that such cases are by their nature legally and factually

complex, and the specific risks posed by the claims at issue in this litigation and NovaGold's

financial situation.  *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)

(MP) ("In evaluating the settlement of a securities class action, [courts] have long recognized

that such litigation is notably difficult and notoriously uncertain.").  In considering whether to

enter into the Settlement, U.S. Lead Plaintiff, represented by U.S. Lead Counsel highly

experienced in securities litigation (*See* Section III(B)(4), *infra*), weighed the value of this

immediate recovery with the prospect that significant proceedings remained ahead, including

continued class certification briefing, the inevitable *Daubert* motions, summary judgment

briefing, and, of course, trial preparation and a trial.  In this instance, there were real risks that

the U.S. Lead Plaintiff would be unable to establish the required elements of the Section 10(b)

claims, including that the alleged misstatements were materially false and misleading, that the

Defendants acted with scienter, that the alleged misstatements actually caused a loss, and that the

U.S. Class actually suffered damages.  Both the issues of loss causation and motive were raised

as significant defenses to the Actions.

In sum, U.S. Lead Plaintiff has a solid understanding of the claims against NovaGold and

the litigation risks associated therewith, and is confident that the Settlement is within the range of

reasonableness.

### C.    The Settlement Has No Obvious Deficiencies

There are also no "grounds to doubt [the Settlement's] fairness or other obvious

deficiencies, such as unduly preferential treatment of class representatives or of segments of the

class, or excessive compensation for attorneys . . ."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*,

163 F.R.D. 200, 209 (S.D.N.Y. 1995) (MP).  New Orleans, like all other Settlement Class

Members, will receive their *pro rata* distribution from the Net Settlement Fund in accordance

with the Plan of Allocation.  Subject to the approval of the Court, U.S. Lead Counsel will seek

compensation for New Orleans's costs and expenses, pursuant to the PSLRA, in an amount not

to exceed C$1050 (US$1,000).

In sum, nothing in the course of the settlement negotiations or the terms of the Settlement

itself raises doubt as to its fairness.  Rather, the substantial recovery to the U.S. Class,

NovaGold's going concern risk, the arm's-length nature of the negotiations, the participation of both the Judge Cote and Judge Phillips as independent mediators, and the participation of sophisticated counsel throughout the litigation, compels the finding that the proposed Settlement is sufficiently fair, reasonable and adequate to justify dissemination of the Notice to the U.S. Class and the scheduling of a final approval hearing.

## II.    THE U.S. COURT SHOULD PRELIMINARILY CERTIFY THE U.S. CLASS

### A.    Standards Applicable to Class Certification

In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (LAK). This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (SAS). Accordingly, doubts as to whether or not to certify a class action should be resolved "in favor of allowing the class to go forward." *Id.* In determining class certification, "the question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir. 2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)).

Because U.S. Lead Plaintiff seeks class certification in the context of preliminary approval, the Court need only preliminarily certify the U.S. Class now, with a more thorough inquiry into the issues—to the extent raised by those with standing—to be heard at the hearing for final approval. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that "conditional certification survives the 2003 amendments to Rule 23(c)(1)"); *In re Qiao Xing Sec. Litig.*, No. 07 Civ. 7097, 2008 WL 872298, at *1 (S.D.N.Y. Apr. 2, 2008) (DLC) (certifying class on a preliminary basis until final determination at fairness hearing); *In re*

*Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962, 2005 WL 1635158, at *5

(S.D.N.Y. July 8, 2005) (RCC) ("In the context of settlement, courts often provisionally certify

the class along with preliminary approval of the settlement."); Manual for Complex Litigation

(4th) § 21.632 ("The judge should make a preliminary determination that the proposed class

satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)).

### B.    This Action Meets the Requirements of Rule 23(a)

#### 1.    Rule 23(a)(1): the U.S. Class Is So Numerous That Joinder of All Members Is Impracticable

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be so

numerous that joinder of all class members would be impracticable. Joinder "need not be

'impossible,' but 'the difficulty or inconvenience of joining all members of the class [must]

make use of the class action appropriate.'" *In re SCOR Holding (Switzerland) AG Litig.*, 537 F.

Supp. 2d 556, 570 (S.D.N.Y. 2008) (DLC) (internal citations omitted).

This Action satisfies the numerosity requirement. As of March 4, 2008, there were over

one-hundred million shares of NovaGold common stock outstanding. (*See* NovaGold's Form 40-

F, for the year ended 2007, filed with the SEC on March 4, 2008). While the exact number of

purchasers of NovaGold stock during the Class Period cannot be determined at this time, the

U.S. Class undoubtedly consists of thousands, if not tens of thousands, of members.

Accordingly, this case satisfies Rule 23(a)(1).

#### 2.    Rule 23(a)(2): Questions of Law or Fact Are Common to the U.S. Class

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that prospective class

members share common questions of law or fact, and this commonality requirement is met in

situations where lead plaintiff's "grievances share a common question of law or fact" with those

of the class. *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001)

(quoting *Marisol*, 126 F.3d at 376). Commonality, in the context of Rule 23(a)(2), does *not* mean that all issues among class members must be identical, rather, "even a single common legal or factual question will suffice." *See In re Agent Orange Prod. Liab.*, 818 F.2d 145, 166-67 (2d Cir. 1987).

Here, common questions of both law and fact abound. U.S. Lead Plaintiff alleges that Defendants made material misrepresentations and omissions in NovaGold's public securities filings, and other public statements, concerning the Company's mine project at Galore Creek. As such, U.S. Lead Plaintiff's allegations set forth a "common course of fraudulent conduct" that has "caused all members of the Class to suffer damages." *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (CLB). U.S. Lead Plaintiff alleges that Defendants' material misrepresentations and omissions artificially inflated the market price of NovaGold common stock, thereby similarly injuring each U.S. Class member who purchased that stock. "Where the facts alleged show that [d]efendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met." *Id*.

### 3.    Rule 23(a)(3): U.S. Lead Plaintiff's Claims Are Typical of the Claims of Other Class Members

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." The critical question, with respect to typicality, is whether the named plaintiff and the class can point to the same "common course of conduct" to support a claim for relief. In the context of Rule 23(a)(3), a plaintiff demonstrates typicality in cases where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *SCOR*, 537 F. Supp. 2d at 571 (citing *Cent. States S.E. & S.W. Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 245 (2d Cir. 2007)). Typicality,

however, does not require "that the situations of the named representative class members be identical." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (CM) (quoting *NASDAQ*, 172 F.R.D. at 126). Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (DLC) (internal citations omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). Indeed, the typicality and commonality requirements "tend to merge into one another as both 'serve as guideposts for determining whether the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *SCOR*, 537 F. Supp. 2d at 571 (internal citations omitted).

Here, U.S. Lead Plaintiff's claims are typical, if not identical, to the claims of every other class member because each asserted claim arises from a series of materially misleading statements made by the Defendants, and the subsequent effect of those statements on the market for NovaGold's common stock. *See SCOR*, 537 F. Supp. 2d at 571. Consequently, the typicality requirement is met.

### 4. Rule 23(a)(4): New Orleans Will Adequately Protect the Interests of the U.S. Class

The fairness and adequacy requirements of Rule 23(a)(4) of the Federal Rules of Civil Procedure are met if (i) the plaintiff's interests are not antagonistic to those of other members of the class it seeks to represent, and (ii) the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

17

First, there is no genuine conflict or antagonism between the claims of the proposed class representative and those of the other members of the proposed class. U.S. Lead Plaintiff purchased 16,800 shares of NovaGold common stock at allegedly artificially inflated prices, and suffered losses as a result of Defendants' alleged fraudulent scheme. (*See* Preston Aff., Ex. A at ¶2, D.E. #88). U.S. Lead Plaintiff did not purchase NovaGold stock at the direction of counsel or in order to participate in this litigation, and it is willing and able to serve as the representative party for the U.S. Class. *Id.* In addition, U.S. Lead Plaintiff will not accept any payment for serving as class representative beyond its *pro rata* share of any recovery and reasonable costs and expenses, in an amount not to exceed approximately C$1050 (U.S.$1,000), directly relating to the representation of the U.S. Class as ordered by the Court. U.S. Lead Plaintiff is committed to monitoring U.S. Lead Counsel and prosecuting this action vigorously, as indicated by their direct involvement in the litigation to date, including the mediation sessions that led to this Settlement.

Second, U.S. Lead Plaintiff retained counsel highly experienced in securities class action litigations to prosecute its claims and the claims of the U.S. Class. Labaton Sucharow LLP, court-appointed U.S. Lead Counsel for U.S. Lead Plaintiff, is amply qualified, experienced, and able to conduct this litigation vigorously and effectively, as demonstrated by its proven track record in the prosecution of complex class actions. (*See* Fonti Decl., Ex. 1).

Given that no conflicts exist between U.S. Lead Plaintiff's interests and those of other class members, and their counsel are able and competent lawyers in this area of practice, the adequacy of representation requirement is met.

C.    **This Action Meets the Requirements of Rule 23(b)(3)**

      1.    **Questions of Law or Fact Common to the U.S. Class Predominate Over Any Questions Affecting Only Individual Members**

Rule 23(b)(3) sets forth two requirements.  Under the first requirement, questions of law or fact common to the members of the class must "predominate" over any questions affecting individual members.  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  This test is "readily met in certain cases alleging consumer or securities fraud."  *SCOR*, 537 F. Supp. 2d at 572 (quoting *Amchem*, 521 U.S. at 625).

In *Moore v. PaineWebber, Inc.*, the Second Circuit explained that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  306 F.3d 1247, 1252 (2d Cir. 2002) (citing *In re Visa Check MasterMoney,* 280 F.3d at 136).  This is undoubtedly true here.

Here, Defendants' liability turns on issues that are common to the U.S. Class—*i.e.*, whether Defendants made materially false and misleading statements with the requisite scienter, through a uniform course of conduct, to the detriment of all U.S. Class members.  Simply put, if Defendants are liable for the conduct alleged, they are liable to all U.S. Class members alike.

Class-wide reliance is established through the "fraud-on-the-market" theory endorsed in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), which dispenses with the requirement that an investor prove awareness or reliance upon a particular statement.  *Id.* at 241-42.  To avail the Class of the *Basic* presumption of reliance, the market for the security must be "efficient."  *Id.* at 245-46.  To determine whether a market is efficient, the court need look no further than the

19

exchange(s) on which the security at issue is traded—the AMEX and the TSX in the case of

NovaGold common stock. *See*, *e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v.*

*Bombardier, Inc.*, No. 05 Civ. 1898, 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006) (SAS) (If

"a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market

for that security is presumed to be efficient."); *In re Nortel Networks Corp. Sec. Litig.*, No. 01

Civ. 1855, 2003 WL 22077464, at **5-6 (S.D.N.Y. Sept. 8, 2003) (RMB) (rejecting defendants'

assertion that the TSX was not an efficient market). Moreover, the market for NovaGold

common stock meets the efficiency factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264,

1286-87 (D.N.J. 1989).[6]

In sum, where, as here, Defendants were engaged in a fraudulent scheme to artificially

inflate the stock price of a publicly-traded company on a national stock exchange, the issues of

law and fact that flow from the Defendants' activity clearly predominate over any individual

issues. In such circumstances, the predominance requirement is met.

### 2. A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods

for the fair and efficient adjudication of the controversy. This is self-evident here. The

superiority requirement is satisfied when the potential class members are significant in number

and geographically dispersed and the interest of the class as a whole in litigating the many

common questions substantially outweighs any interest by individual members in bringing

separate actions. *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001) (DLC).

---

[6] *Please see* Preston Aff. at ¶¶ 23-55, finding that each of the enumerated *Cammer* factors are independently satisfied and the market for NovaGold's common stock should thus be deemed efficient as a matter of law.

Here, the utility of presenting the claims asserted through the class action method is substantial since the U.S. Class Members who have been injured number in the hundreds of thousands, but few may have been damaged to a degree that would induce them to institute litigation on their own behalf. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) (RWS).

Further, certification of the U.S. Class is the superior method to facilitate the resolution of U.S. Lead Plaintiff's claims. Without the settlement class device, NovaGold could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the settlement. Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. *See In re Telik, Inc. Sec. Litig.*, No. 07 Civ. 4819, 2008 WL 4198516, at *12 (S.D.N.Y. Sept. 10, 2008) (CM). Resolution of U.S. Lead Plaintiff's claims against Defendants through the proposed settlement is plainly superior to any other available method of resolution.

For all of the foregoing reasons, this Court should find that the U.S. Class meets the requirements of both 23(a) and 23(b) and should certify the U.S. Class.

### D.    U.S. Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) of the Federal Rules states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). U.S. Lead Plaintiff respectfully requests that Labaton Sucharow be appointed U.S. Class Counsel for the U.S. Class. As discussed above, Labaton Sucharow has been and will continue to fairly and adequately represent the class. Proposed counsel is knowledgeable about the applicable law, extremely experienced in handling class actions, has performed substantial work in pursuing the U.S. Class's claims here and in reaching a settlement, and has committed the necessary resources to representing the U.S. Class. *See* Fed. R. Civ. P. 23(g)(1)(A).

Labaton Sucharow is among the nation's preeminent law firms in this area of practice and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class actions since the enactment of the PSLRA, including *In re American International Group, Inc. Sec. Litig.*, No. 04-8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund); *In re Countrywide Sec. Litig.*, No. C 07-5295 (C.D. Cal.) (representing the State of New York and New York City Pension Funds); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-1500 (N.D. Ala.) (representing New Mexico State Investment Council, the New Mexico Educational Retirement Board and the State of Michigan Retirement System).  (*See* Fonti Decl., Ex. 1.)

## III.    THE COURT SHOULD APPROVE THE FORM OF THE NOTICES AND PLAN FOR PROVIDING NOTICE TO THE U.S CLASS

The Court should also approve the form and content of the proposed Notice and Summary Notice.  (*See* Ex.1 and 3, annexed both to the proposed Preliminary Approval Order and Stipulation).  Each is written in clear, straightforward language, and the Notice uses a format that clearly sets out the relevant information.  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises class members of the nature of the action, the definition of the U.S. and Canadian Classes sought to be certified, the class claims and issues, the claims that will be released, that a class member may enter an appearance through counsel if desired, that the U.S. Court will exclude from the U.S. Class any class member who requests exclusion (and sets forth the procedures and deadline for doing so), the binding effect of a judgment on class members under Rule 23(c)(3), how to object to the Settlement, and how to make a claim.

The Notice also satisfies the separate disclosure requirements imposed by the PSLRA. The Notice, *inter alia*: states the amount of the Settlement, determined in the aggregate and on an average per share basis; provides a statement from each party concerning the issues about which

they disagree; provides a brief statement explaining the reasons why the parties are proposing the Settlement; states the amount of attorney's fees and maximum amount of expenses (both on an aggregate and average per share basis) that U.S. and Canadian Class Counsel will seek, with a brief explanation supporting such fees and expenses; provides the names, addresses, and telephone numbers for the Claims Administrator and U.S. Class Counsel, who will be available to answer questions from U.S. Class members; and includes a cover page summarizing all of this information. *See* 15 U.S.C. § 78u-4(a)(7); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 184-85 (S.D.N.Y. 2003) (SAS) (discussing PSLRA notice requirements and approving notice where "cover page" was actually two pages).

Additionally, both of the Notices disclose the date, time and location of the Settlement Hearing and the procedures and deadlines for the submission of Proof of Claim forms and objections to any aspect of the Settlement, Plan of Allocation, or attorney's fees and expenses to be sought by counsel. These disclosures are thorough and should be approved by the Court.

The Garden City Group, Inc. is the proposed claims administrator. Garden City Group has been a claims administer for almost 20 years. During that time, they have administered thousands of settlements, including those in *In re WorldCom, Inc. Sec. Litig.*, *SCOR* and *In re Openwave Systems Sec. Litig.,* and distributed billions in claims.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). The proposed notice plan readily meets these standards. U.S. Lead Plaintiff, through an experienced settlement and

claims administrator, will cause the Notice, including the Plan of Allocation and Proof of Claim

form, to be sent by first class mail to every U.S. Class Member who can be identified through

reasonable effort.  Canadian Plaintiffs will similarly issue the Notice in Canada.  U.S. and

Canadian Plaintiffs will issue the Notice principally by using record holder data produced by the

transfer agent for NovaGold, and by reaching out to broker-dealers for the last-known names and

addresses of potential Class Members and shareholders.  The Summary Notice, which

summarizes the essential Settlement terms and informs readers how to obtain the full Notice, will

be published in both the United States (once in *The Wall Street Journal* and transmitted over

*PRNewswire*) and throughout Canada (once in *The Vancouver Sun*, *The Globe and Mail*, *The

National Post* and *La Presse* (in French)).  The Notice will be available in English and French

and Garden City Group will create a bi-lingual website for class members to use to access

important information about the Settlement.

Accordingly, this notice program satisfies the requirements of Rule 23 and due process

and should be approved by the Court.  *See In re Qiao Xing Sec. Litig.*, 07-Civ-7097, 2008 WL

872298 (S.D.N.Y. Apr. 2, 2008).

## <u>CONCLUSION</u>

For the foregoing reasons, U.S. Lead Plaintiff respectfully requests that the Court preliminarily certify the proposed U.S. Class, grant preliminary approval to the proposed Settlement, approve the forms and methods of notice, and issue the proposed Preliminary Approval Order submitted herewith.

Dated: New York, New York
     April 6, 2010

                                          /s/ Joseph A. Fonti
                              **LABATON SUCHAROW LLP**
                              Jonathan M. Plasse  (JP 7515)
                              jplasse@labaton.com
                              Joseph A. Fonti  (JF 3201)
                              jfonti@labaton.com
                              Nicole M. Zeiss (NZ 3894)
                              nzeiss@labaton.com
                              140 Broadway
                              New York, NY 10005
                              Tel:  (212) 907-0700
                              Fax:  (212) 883-7044

                              *Counsel for Lead Plaintiff New Orleans*
                              *Employees' Retirement System and Lead*
                              *Counsel for the Class*